IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| S.M., J.C., C.O., T.R., M.W., AND K.W., | § | |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 9:20-CV-_____ |
| | § | |
| BOARD OF REGENTS OF STEPHEN | § | |
| F. AUSTIN STATE UNIVERSITY AND | § | |
| SCOTT GORDON, PH.D., PRESIDENT | § | |
| OF STEPHEN F. AUSTIN | § | |
| STATE UNIVERSITY, AND | § | |
| STEPHEN F. AUSTIN | § | |
| STATE UNIVERSITY | § | |
| | § | |
| *Defendants* | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiffs, S.M., J.C., C.O., T.R., M.W., and K.W., ("Plaintiffs") file this Complaint against The Board of Regents of Stephen F. Austin State University ("The Board"), Scott Gordon, Ph.D. as President of Stephen F. Austin State University ("President Gordon"), and Stephen F. Austin State University.[1]

**NATURE OF THE CASE**

1.  This is a case about procedural due process and the truth. Plaintiffs, students at Stephen F. Austin State University ("SFA"), a public university, are being deprived of their constitutional due process rights based on falsehoods, misrepresentations, and a rush to convict arising from an on campus incident involving several SFA students that occurred on or about September 14, 2020.

---

[1] Plaintiffs, 18-year-old, female college students, are referred to by their initials as opposed to their full names due to death threats being made against them online and on social media. Plaintiffs will provide the Court with a list of Plaintiffs' names under seal.

2.     SFA and its representatives have publicly referred to Plaintiffs as "perpetrators" and "suspects" and have guaranteed that Plaintiffs will be disciplined.  SFA and its representatives, however, refuse to provide Plaintiffs with adequate notice of what SFA rules they are accused of violating, refuse to turn over key evidence related to the incident, including video recordings and witness statements, and refuse to allow Plaintiffs adequate time to prepare to respond to the allegations against them.

3.     Even worse, SFA has acknowledged numerous falsehoods related to how the incident is being portrayed to and reported in the media; yet SFA continues to rush to punish these students for something they did not do.  SFA is effectively telling its student body, alumni, employees, and the world, "What is being said about this incident is not true but we are going to punish these young ladies as if it were true."  While the truth may not matter to SFA, it does to Plaintiffs

## PARTIES

4.     Plaintiff, S.M., is an individual and Citizen of Texas.

5.     Plaintiff, J.C., is an individual and Citizen of Texas.

6.     Plaintiff, C.O., is an individual and Citizen of Texas.

7.     Plaintiff, T.R., is an individual and Citizen of Texas.

8.     Plaintiff, M.W., is an individual and Citizen of Texas.

9.     Plaintiff, K.W., is an individual and Citizen of Texas.

10.    Defendants, members of the Board of Regents of Stephen F. Austin State University are appointed by the Governor of the State of Texas to control and manage Stephen F. Austin State University, which is a public educational institution established under Chapter 101 of the Texas Education Code.  The Board of Regents of Stephen F. Austin State University are:  Alton L. Frailey (Chair); Karen Gantt (Vice Chair); M. Thomas Mason (Secretary); David Alders; Dr. Scott H.

Coleman; Robert A. Flores; Brigettee Carnes Henderson; Judy Larson Olson; and Jennifer Wade Winston.[2]  At this time, the Board Members are only being sued in their official capacities.  The Board of Regents of Stephen F. Austin State University may be served with process at 1936 North Street, Nacogdoches, Texas 75962.

11.     Defendant, Scott Gordon, Ph.D., is the President of Stephen F. Austin State University ("President Gordon").  President Gordon was hired by the Board.  President Gordon may be served with process at 1936 North Street, Nacogdoches, Texas 75962, or 513 East Starr Avenue-FM 1878 Nacogdoches, Texas 75962.  At this time, Dr. Gordon is only being sued in his official capacity.

12.     Defendant, Stephen F. Austin State University, is a public educational institution established under Chapter 101 of the Texas Education Code and is an entity created by the State of Texas under the control and management of its Board of Regents.  As such, it may be served with process on Scott Gordon, Ph.D., President, 1936 North Street, Nacogdoches, Texas 75962.

## JURISDICTION AND VENUE

13.     Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has federal question jurisdiction because the action is brought pursuant to 42 U.S.C. § 1983 and the *Ex Parte Young* doctrine for violations of Plaintiffs' rights guaranteed to them by the United States Constitution, specifically their Fourteenth Amendment Right of Due Process.

14.     This Court has personal jurisdiction as all parties are Citizens of Texas.

15.     Venue is proper in the U.S. District Court for the Eastern District of Texas pursuant to 28 U.S.C. §1391(b)(2) because a substantial portion of the events giving rise to this action were committed therein.

---

[2] A nonvoting "Student Regent" also sits on the Board of Regents but is not included here.

## CONDITIONS PRECEDENT

16.    All conditions precedent have been performed or have occurred.

## BACKGROUND

17.    On Monday, September 28, 2020, a news story broke on a Houston, Texas television news network about a purported "swatting" incident that occurred at Stephen F. Austin State University and involved several SFA students, specifically members of SFA's cheer team.

18.    "Swatting" is a term that is used when someone calls law enforcement and reports a false incident, typically an ongoing violent incident, in order to get law enforcement to act immediately believing that there is a threat or danger to the community.

19.    An SFA student, C.E.; her parents; and her attorney claimed that on September 14, 2020, C.E., who is African American, had been the victim of a racist "swatting" incident orchestrated by her three white roommates and other teammates.[3]

20.    C.E.; her parents; and her attorney claimed that C.E.'s roommates and teammates made a false report to the SFA police department that C.E. had scissors and was threatening to stab people. Specifically, C.E.'s lawyer told the media, "[t]he complaint was that she [sic] stabbing people and threatening people with scissors."

21.    C.E.; her parents; and her attorney claimed that C.E. was awakened by SFA police officers storming into C.E.'s dorm room with guns drawn.[4]

---

[3] Although C.E., who is believed to still be a minor, has publicly identified herself in the media, her initials are being used in compliance with the *Local Rules for the United States District Court for the Eastern District of Texas*.

[4] As stated in a September, 29, 2020 Houston Chronicle article on the incident:  "A cheerleader at Stephen F. Austin State University says she was awakened by police storming her dorm room with guns drawn after a group of students made a false report to authorities claiming she was threatening to stab people with scissors." https://www.chron.com/news/houston-texas/article/SFA-police-storm-Black-cheerleader-s-dorm-room-15605858.php#photo-20033261

22. C.E.'s lawyer also linked this incident to the Breonna Taylor tragedy, calling it a "Breonna Taylor circumstance."

23. The story went viral.

24. As the story got picked up by other media outlets and on social media, President Gordon issued the following statement that night.

> I have been briefed on the incident that took place on September 14th and want everyone to know that SFA takes this matter very seriously. Filing a false report violates the SFA Code of Conduct and potentially violates the law as well. The investigation and judicial process take time. I want to urge everyone to withhold judgment until the conclusion of our investigation and process. I have directed staff to be thorough and keep me apprised throughout this investigation. Each perpetrator will be dealt with appropriately.
>
> My heart goes out to the young lady who was an innocent victim in this matter. We will do all we can to support her and her family through this heinous ordeal.
>
> We will not have this at SFA!

25. On Wednesday, September 30, 2020, President Gordon held a press conference at The Fredonia Hotel & Convention Center in Nacogdoches.[5] During the press conference, President Gordon called C.E. "the innocent young lady, the victim in this case." President Gordon stated, "Those who were involved will be held accountable" and that this was a "very serious incident that involved at least 10 young ladies and a core group of approximately six."

26. President Gordon then turned the press conference over to SFA Police Chief John Fields. Chief Fields acknowledged that the incident was being perceived as racial but stated unequivocally that the incident was not racial. Chief Fields said, "I can assure you, it's not racial. It's far from that." Chief Fields noted that the "core group" consisted of 3 Caucasian females and 3 black females.

---

[5] The video and audio recording of the press conference is publicly available at: https://www.youtube.com/watch?v=POw2L3eFDXA.

27. Chief Fields also stated that it was a community assistant or "CA" in the residence hall who called the University Police, not one of the students involved. Chief Fields noted that he was "debunking the theory" that the students involved called the police. Chief Fields stated, specifically, "It was the community assistant in the residence hall; it wasn't the students, who called and gave the actual false report."

28. Chief Field described the report that the police received from the CA as "possible threats made to the resident about scissors, killing. That was the gist of the call."

29. When three officers responded to the residence hall, Chief Fields also stated that the officers knocked on C.E.'s door four times. When C.E. did not answer, the officers went through another door, after a suite mate let the officers through her bathroom door. Chief Fields stated "[o]nly one officer had a weapon unholstered" and the officer was using the light on his weapon because it was dark. Chief Field stated "[a]t no time was he intentionally trying to point [it] at the subject." Once C.E. was found in bed, the threat was de-escalated. C.E. was then asked to come out of her room and a speak with the officers, which she did.

30. Chief Fields stated that this account was supported by the officers' body-camera footage, and police had requested C.E.'s parents' permission to release the body-camera footage. Chief Fields stated, "Once that (the body camera) is released, everyone will see exactly what happened."

31. Chief Fields indicated "at no time did we go into the room like the Wild Wild West like its being presented in the media and some other the social media posts."

32. During his remarks, Chief Fields also referenced "evidence" and "social media posts."

33.     On Saturday, October 3, 2020, SFA held another press conference.[6] By this time SFA had retained Erika Harris, a media consultant.  Ms. Harris first announced that the SFA Police Department investigation had been handed over to the Nacogdoches District Attorney's Office.  Ms. Harris stated that "the University's (student) disciplinary investigation was expected to be concluded next week.  At that time, it will be determined what university disciplinary actions will be taken."  Ms. Harris then stated, "The university is not at war with the victim [C.E.] and her family."

34.     Ms. Harris then called on C.E. and her family to support transparency and agree to allow SFA to release the body-camera footage of the incident so that "everyone will be able to see exactly what happened, and see that the video will show a very different scenario than what is being portrayed in media."  Ms. Harris called on C.E.'s family to agree to release the camera footage to "shine the light on the truth."

35.     In response, C.E.'s attorney issued a statement accusing 11 SFA students of committing a felony and calling for the students to be immediately removed from campus, without hearing or any process.[7]  C.E.'s attorney also claimed that SFA was "threatening" to release the video tape.

---

[6] The video and audio recording of the press conference is publicly available at:
https://www.khou.com/article/news/local/sfa-swatting-police-body-cam-footage/285-bee5d096-f48a-44ed-8bd1-a87145d1cc6d.

[7] C.E.'s attorney stated:

> [C.E's] family and their attorney were not given notice of the SFA press conference. All 11 students which SFA stated were involved in false report of felony by [C.E.] and endangering her life are still on campus.  Normal procedure at other schools is to remove students while the disciplinary process proceeds. SFA is threatening to release an edited part of the video of their minor daughter in sleepwear to the nation.  [C.E.'s] family is legally entitled to a copy.  SFA's threat to release the video to the public is intimidation to silence the victim by embarrassment.  The public will not accept this.  [C.E.] cannot stand to relive this trauma caused by SFA and 11 SFA students.  We request SFA to start cooperating.

https://abc13.com/stephen-f.-austin-state-university-swatting-case-christin-evans-police-barge-into-cheerleader%27s-dorm-fake-report-sfa-prank-call-to/6667462/

36. Based on the statements by SFA's Police Chief during the September 30, 2020 press conference and the statements of SFA's Media Consultant during the October 3, 2020 press conference, which are presumably based on the body-camera footage, recordings, and other evidence, the initial account of events told by C.E.; her parents; and her attorney to the media differs wildly from what really occurred on September 14, 2020.  In short, the story is changing.

## LEGAL CLAIMS

COUNT ONE: *EX PARTE YOUNG* ACTION
FOR INJUNCTIVE RELIEF AGAINST
THE BOARD AND PRESIDENT GORDON

37. Plaintiffs file suit seeking prospective, injunctive relief and declaratory relief from a state actor based on ongoing violations of their Fourteenth Amendment rights to due process.  *See Ex Parte Young*, 209 U.S. 123 (1908); *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013).

38. Plaintiffs file suit against The Board and President Gordon, state officers acting in their official capacities.  *See id*.

*REQUEST FOR PERMANENT INJUNCTIVE RELIEF*

39. Plaintiffs seek permanent injunction from this Court ordering The Board and President Gordon to order all subordinates at SFA to provide Plaintiffs with Due Process as required by the Fourteenth Amendment.

> The Fourteenth Amendment of the United States Constitution provides, in part, that:
>
> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; *nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws*.

U.S. Const. Amend. XIV, § 1 (emphasis added).  The italicized words are what as known as the "due process clause of the 14th Amendment" and prohibits a state from depriving a person of life, liberty, or property without providing due process.

40. As students at a public university, Plaintiffs are entitled to procedural due process under the 14th Amendment prior to discipline that would remove them from an academic setting—*i.e.*, removal from an academic program, suspension, or expulsion. *See Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 85 (1978); *Goss v. Lopez*, 419 U.S. 565, 581 (1975). This is because Plaintiffs have a liberty interest in obtaining and continuing their education. *See id*.

41. When a state or state entity moves to deprive a person of a liberty interest, procedural due process requires, at a minimum, notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). What process is due is measured by a flexible standard that depends on the practical requirements of the circumstances. *Id*. The flexible standard includes three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id*.

42. Although these minimum due process requirements are present even when a state university moves to remove a student for purely academic reasons—such as failing a course or not maintaining a specific GPA—procedural due process requirements become stronger when a state university moves to discipline a student for non-academic reasons.[8] *See Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 86-90 (1978); *Wheeler v. Miller*, 168 F.3d 241, 248 & n.5 (5th Cir. 1999).

43. For example, if a student is involved in a fight, the United States Supreme Court has held that procedural due process requires that the student be given oral or written notice of the charges

---

[8] Academic dismissals arise from a failure to attain a standard of excellence in studies whereas disciplinary dismissals arise from acts of misconduct. *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 86-87 (1978).

against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story. *Goss v. Lopez*, 419 U.S. 565, 581 (1975).

44. In this case, Defendants are seeking to act against Plaintiffs that is purely disciplinary in nature. President Gordon and SFA have also made several public statements about Plaintiffs being "perpetrators" and "suspects," further implicating Plaintiffs' liberty interests and stigmatizing Plaintiffs. Thus, under these circumstances, Plaintiffs are entitled to more procedural due process than just mere notice and an opportunity to say their side.

45. Unfortunately, Defendants are insisting on denying Plaintiffs' their procedural due process in multiple ways.

46. First, when Plaintiffs' met with Mr. Dennis B. Mosely, SFA's Director of the Office of Student Rights and Responsibilities, Plaintiffs were shown a one-page sheet of paper, purported to be the "charges" against them. The page was four paragraphs in length. The first two paragraphs appeared to be background information and the actual charge was written for a violation of "dishonesty" which no reference to any statement that was alleged to be dishonest. There were no names listed in the document and no allegation about which students said what. The paper listed the Plaintiffs and others as "Student 1," "Student 2," etc. There was no way of even knowing who "Student 1," "Student 2," etc., were. Thus, none of the Plaintiffs even know what they are allegedly to have done.

47. Compounding the problem, Plaintiffs were not allowed to have a copy of the paper, nor were their attorney's or parents allowed to even look at the paper. One parent was even reprimanded by Mr. Moseley for trying to simply read the paper. SFA refuses to provide a copy of the of the paper to Plaintiffs' attorneys. The "notice" given by SFA is insufficient to satisfy even minimum standards of due process, let alone due process under these heightened

circumstances where Plaintiffs are facing possible disciplinary expulsion for non-academic reasons and have been stigmatized by Defendants.

48. Second, SFA refuses to provide Plaintiffs with any access to key evidence in this case. Plaintiffs know from Chief Field's statements that relevant police body-camera footage exists. Further, Plaintiffs and others gave or recorded written statements to SFA Police Officers on the night of the incident. SFA refuses to produce these materials to Plaintiffs. Indeed, based on Chief Field's statements, there may be case-dispositive, exculpatory evidence.

49. Third, SFA has failed to give Plaintiffs opportunity to prepare for their "hearings." Plaintiffs were notified of the charges on Thursday, October 1, 2020, and Friday, October 2, 2020. Plaintiffs were then told that their hearing would be on Monday, October 5, 2020; Tuesday, October 6, 2020; and Wednesday October 7, 2020. For example, Plaintiff C.O. received notice of her charges on Friday, October 2, 2020, and her hearing on Monday, October 5, 2020.

50. SFA took over two weeks just to complete its own investigation; yet it expects Plaintiffs to be able to defend themselves with inadequate notice of the charges and no access to critical, readily available evidence, in less than two days. This does not satisfy minimum procedural due process guarantees under the circumstances.

51. Lastly, by his statements, President Gordon has denied Plaintiffs a fair and impartial hearing. President Gordon has referred to C.E. as an "innocent victim" and Plaintiffs as "perpetrators" without even a single hearing being conducted or giving Plaintiffs the opportunity to tell their side.

52. In a communication sent out on October 3, 2020, President Gordon went even further guaranteeing to the SFA community that the investigation would be completed by the end of the

week and that Plaintiffs would be disciplined.[9]  President Gordon specifically stated that "the student disciplinary process continues, and the investigation by SFA's Office of Student Rights and Responsibilities is expected to conclude by the end of the week.  At that time, it will be determined what disciplinary actions will be taken."  This statement was also echoed during Ms.

---

[9] President Gordon's full statement was as follows:



Dear Fellow Lumberjack Alumni and Friends,

In keeping with the "SFA Way" and adhering to our commitment to transparency, we want to keep you informed about events and activities on campus that may impact you, as well as our entire campus community.

Recently, an incident took place on campus involving a false police report. The University Police Department's investigation into this incident has concluded, and the information has been submitted to the Nacogdoches District Attorney, who will determine if any potential criminal charges will be filed against the students involved. However, the student disciplinary process continues, and the investigation by SFA's Office of Student Rights and Responsibility is expected to conclude by the end of the week. At that time, it will be determined what disciplinary actions will be taken.

Thankfully, no one was physically injured during this incident and significant steps are being taken to care for and assist the victim involved. Unfortunately, the facts surrounding this incident have been largely misinterpreted and mischaracterized in television, print, and various social media platforms. While the negative media attention may come as no surprise, we wanted to provide you, our alumni, donors, and friends, with assurances that the university administration has been working diligently with the university police department and local law enforcement to gather all the facts and hold those responsible accountable. Furthermore, the university administration has already begun working with a wide variety of campus constituencies in the development of updated policies and procedures that will help ensure that incidents similar to this are dealt with as expeditiously and effectively as possible in the future.

SFA has a long history – almost 100 years – of providing a quality education in the beautiful setting offered by our iconic campus. The safety of our students is a top priority, and as we seek an appropriate resolution to this incident, please know that our commitment to our students, alumni, friends, and local community is stronger than ever.

Sincerely,

Scott Gordon

Scott Gordon
President

Harris' press conference. Thus, the guilty verdict is already in before the hearings have even begun.

53. Plaintiffs seek a permanent injunction from this Court ordering Defendants to require their subordinates to:

1. Provide proper notice of the charges against each Plaintiff and provide a copy of the document to each Plaintiff and her attorneys;

2. Produce all body-camera footage of the incident, all recording of the incidents, all social media posts gathered by SFA, and all written statements by any witnesses to each Plaintiff and her attorneys;

3. Conduct no further hearings until 14 days after the notice provided in item one is given and the items listed in item two are provided to each Plaintiff and her attorneys; and

4. Cease referring to Plaintiffs as "perpetrators," "offenders," etc. in the media and to the SFA community until an actual hearing is had on the incident.

*APPLICATION FOR TEMPORARY RESTRAINING ORDER*

54. Plaintiffs request that the Court issue a Temporary Restraining Order ("TRO") to preserve the *status quo* by prohibiting Defendants and their subordinates from taking any further disciplinary action against Plaintiffs including scheduling or conducting any hearing or attempting to compel Plaintiffs to make any statements about this incident to SFA officials.

55. Plaintiffs further request that the TRO also order Defendants and their subordinates to persevere all evidence concerning this matter, including police body-camera footage, recordings, and all witness statements, as well as any communications between any employee or representative of SFA and C.E., C.E.'s parents, or C.E.'s attorney concerning this incident.

56.     Per the Local Rule CV-65 of the *Local Rules for the United States District Court for the Eastern District of Texas*, a separate Emergency Motion for *Ex Parte* Temporary Restraining Order is being filed contemporaneously with this Complaint.

## *REQUEST FOR PRELIMINARY INJUNCTION*

57.     Following a hearing, Plaintiffs ask the Court to issue a Preliminary Injunction prohibiting Defendants and their subordinates from taking any further disciplinary action against Plaintiffs including scheduling or conducting any hearing or attempting to compel Plaintiffs to make any statements about this incident to SFA officials and ordering Defendants and their subordinates to persevere all evidence concerning this matter, including police body-camera footage, recordings, and all witness statements, as well as any communications between any employee or representative of SFA and C.E., C.E.'s parents, or C.E.'s attorney concerning this incident.

## **ATTORNEY'S FEES AND COURT COSTS**

58.     Plaintiffs seek to recover their reasonable and necessary attorney's fees and expenses to protect their constitutional rights. *See Warnock v. Pecos Cnty., Tex.*, 88 F.3d 341, 343 (5th Cir.1996) ("Claims for fees associated with prospective relief and fees that may be awarded as costs are not barred by the Eleventh Amendment.") (citing *Hutto v. Finney*, 437 U.S. 678, 692, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978))); *accord Jones v. Tex. Juvenile Justice Dep't*, 646 Fed. Appx. 374, 377 (5th Cir. 2016) (noting that claims for costs and attorney's fees in an *Ex Parte Young* action are not barred by the Eleventh Amendment); *see also* 42 U.S.C. § 1988.

59.     Plaintiffs also seek to recover their Court Costs, as well as prejudgment and post judgment interest.

## PRAYER

WHEREFORE, Plaintiffs respectfully pray for judgment against Defendants for the following:

a. A Temporary Restraining Order;[10]

b. A Preliminary Injunction;

c. A Permanent Injunction;

d. Reasonable and necessary attorney's fees;

e. Court costs;

f. Prejudgment and post-judgment interest; and

g. Such other and further relief, at law or in equity, to which Plaintiffs may show themselves justly and lawfully entitled.

Respectfully submitted,

| | |
|---|---|
| **MALLEY LAW FIRM, PLLC** | **FRANKLIN LAW FIRM, PLLC** |
| /s/ *Anthony Malley* | /s/ *Tanner Franklin* |
| **Anthony "Tony" Malley, III** | **Tanner G.M. Franklin** |
| Texas Bar No. 24041382 | Texas Bar No. 24082506 |
| tony@mallaw.com | tfranklin@tfranklinlawfirm.com |
| 1485 Wellington Cir. Ste. 101 | 2528 Highway 103 |
| Beaumont, Texas 77706-3421 | Etoile, Texas 75944 |
| (409) 212-8888 – Telephone | (936) 854-3213 – Telephone |
| (409) 212-8002 – Fax | (888) 430-2559 – Fax |

**Attorneys for Plaintiffs**

---

[10] Per the Local Rule CV-65 of the *Local Rules for the United States District Court for the Eastern District of Texas*, a separate Emergency Motion for *Ex Parte* Temporary Restraining Order is being filed contemporaneously with this Complaint.